1   PATRICIA A. KINAGA, SBN 126845
    DANIEL HO, SBN 205852
2   WOO JEAN CHUNG, SBN 266838
    KINAGA LAW FIRM
3   617 South Olive Street, Suite 1210
    Los Angeles, CA 90014
4   Tel: 213.623.8588
    Fax: 213.623.8788
5   pkinaga@kinagalawfirm.com
    dho@kinagalawfirm.com
6   jchung@kinagalawfirm.com

7   Attorneys for Plaintiff
    NICHOLAS LYON
8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11  NICHOLAS LYON, an individual,         CASE NO.

12              Plaintiff,                SACV13-1322 MWF (AJWx)

13         v.                             COMPLAINT AND
                                          DEMAND FOR JURY TRIAL
14  FUNIMATION PRODUCTIONS, LTD.,
    dba FUNIMATION ENTERTAINMENT;
15  AMERICAN UNITED MEDIA, LLC, dba       1.  Copyright Infringement (17 U.S.C.
    IFA DISTRIBUTION; ROBERT                  section 501 et seq.)
16  RODRIGUEZ, as an individual; GEN
    FUKUNAGA, as an individual; GIANT APE  2.  Breach of Contract
17  MEDIA; and DOES 1 through 50,
                                          3.  Breach of Covenant of Good Faith and
18              Defendants.                   Fair Dealing

19                                        4.  Promissory Fraud [False Promises]

20                                        5.  Intentional Interference with Contractual
                                              Relations
21
                                          6.  Unfair Competition (Calif. Bus. & Prof.
22                                            Code Section 17200 et seq.)

23                                        7.  Common Law Unfair Competition

24

25

26  Plaintiff, Nicholas Lyon ("Plaintiff"), alleges as follows:

27

28
                                    1

## FEDERAL QUESTION JURISDICTION

1.     This action asserts a claim for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"). This Court has exclusive jurisdiction over this action under the Copyright Act. 28 U.S.C. section 1338 (a)

## PERSONAL JURISDICTION

2.     Defendant American United Media, LLC (AUM) was at relevant times doing business at 7119 Sunset Blvd., Suite 403, Los Angeles, CA. 90046. AUM is also doing business in Los Angeles County under the name IFA Distribution, whose address is 10250 Constellation Blvd. 2900, Los Angeles, CA 90067.

3.     Plaintiff, Defendant AUM, and SC Films International (hereinafter "SC Films") entered into and executed in Los Angeles County an agreement entitled "Confidential Bullet Term Sheet" (hereinafter referred to as "Original Agreement") for the production of a film to be entitled "Bullet" (hereinafter "Motion Picture").

4.     Defendant Robert Rodriguez is a resident of California, and signed the Original Agreement on behalf of AUM.

5.     Plaintiff is a resident of Los Angeles County, California.

6.     Matthew Joynes, the chair and a founder and shareholder of SC Films and a major witness to the factual allegations set forth herein, is a resident of Los Angeles County, California.

7.     SC Films is headquartered in Los Angeles County, California.

8.     Defendant FUNimation Entertainment (hereinafter "FUNimation") is a fictitious name for FUNimation Productions, Ltd., a Texas limited partnership. FUNimation is a national film and television company which distributes productions in North America, and has substantial contacts with California given that many of its productions, including the Motion Picture, are made in California. After entering into a contract with AUM concerning the Motion Picture, FUNimation met in Los Angeles, and other locations in California (including Lancaster) to, inter alia, visit the production set, attend meetings, including with the director, editor and other

2

1  personnel working on the Motion Picture, and to view daily footage of the Motion Picture, and

2  has been in California to advertise the Motion Picture.

3        9.     Defendant Gen Fukunaga is President of FUNimation which has substantial

4  contacts in California as described in Paragraph 8, infra; as a Managing Partner of AUM, which is

5  doing business in California as described in paragraph 1, infra; and is Managing Director of IFA

6  Distribution, a company located at 10250 Constellation Boulevard, Los Angeles, CA 90067.

7        10.    Defendant Giant Ape Media is FUNimation's film division which is currently

8  advertising the Motion Picture in California.

9

10  **VENUE**

11        11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial

12  part of the events or omissions giving rise to the claims alleged herein occurred in this District.

13        12.    The Original Agreement was entered into in Los Angeles County, the filming took

14  place in Los Angeles County, AUM has conspired with FUNimation and Giant Ape Media to

15  commit acts in violation of the Original Agreement, FUNimation has substantial contacts in Los

16  Angeles County as described in paragraph 8 infra, FUNimation and Giant Ape Media have

17  marketed the Motion Picture in Los Angeles County, AUM is doing business in Los Angeles

18  County, and defendant Robert Rodriguez resides in this District.

19

20  **THE PARTIES**

21        13.    Plaintiff Nicholas Lyon is a film writer, director and producer.

22        14.    Defendant American United Media, LLC, is a limited liability company which

23  produces top-tier feature films and television projects throughout the world.

24        15.    Defendant FUNimation is a film and television company known mainly for its

25  distribution of Japanese anime productions.

26        16.    Defendant Robert Rodriguez is the President of AUM.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

17.     FUNimation President Defendant Gen Fukunaga is also the Managing Partner of Defendant AUM.

18.     Defendant Giant Ape Media is a distributor that markets live action/independent films, including the Motion Picture.

19.     The true names and capacities of defendants named herein as Does 1 though 10, inclusive are unknown to Plaintiff, and therefore Plaintiff sues these defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and on that basis alleges that Does 1 through 10, inclusive, were responsible for the acts and transactions alleged herein and are liable to Plaintiff.

20.     This Court has personal jurisdiction over Defendants in that Defendants conducted, and continue to conduct, business in this District, Defendants intentionally direct activities to this District, and the infringing acts, conduct and omissions alleged in this Complaint occurred in this District.

## FACTS COMMON TO ALL COUNTS

21.     This dispute concerns the production and ownership of a motion picture entitled "Bullet" (the "Motion Picture"). The Motion Picture will star actor Danny Trejo, known for his roles in gritty films including "Machete" and television appearances in series such as "Breaking Bad".

22.     Plaintiff entered into the Original Agreement on or about September 2, 2012, for the purpose of "developing, producing, completing and delivering the motion picture presently entitled "Bullet"" based on a script written by Plaintiff, and for which he submitted to the Copyright Office on December 20, 2012 for copyright registration.

\        \        \

\        \        \

4

23.    By the Original Agreement, all the parties—which was defined to consist of Plaintiff Lyon, SC Films and AUM-- agreed to create a special purpose vehicle entity to hold and manage the rights, produce, and own the Motion Picture.

24.    By the Original Agreement, SC Films and AUM were to contribute a minimum of $250,000 each of equity for production of the Motion Picture.

25.    By the Original Agreement, Plaintiff was to be the director and provide the script, and was further referred to in the Original Agreement as "Producer".

26.    By the Original Agreement, Plaintiff was to receive "A NICK LYON FILM" credit on all posters, DVD covers and advertisements for the Motion Picture.

27.    By the Original Agreement, Plaintiff was to receive 30% of net receipts, defined as adjusted gross receipts; AUM and SC Films were to each receive 35% of net receipts.

28.    By the Original Agreement, each party promised to fulfill its obligations and exercise its rights in a manner that would reflect favorably at all times on the good name, goodwill, and reputation of all the parties to the Original Agreement.

29.    By the Original Agreement, all the parties were required to exchange and approve "all relevant fully executed agreements by all parties".

30.    By the Original Agreement, all parties promised to avoid "deceptive, misleading, or unethical practices", and to comply with all applicable laws and regulations.

31.    Without notice to, or knowledge by Plaintiff, just two days after execution of the Original Agreement, Defendants AUM and FUNimation executed an agreement entitled "Deal Memo" (hereinafter "AUM/FUNimation Agreement") whereby AUM purportedly agreed to "produce and deliver" the Motion Picture.

32.    The AUM/FUNimation Agreement makes absolutely no reference to Plaintiff, including his role, as set forth under the Original Agreement, as director or producer of the Motion Picture and instead purports to grant FUNimation "full approval rights over all aspects of the production, including the script, the primary cast, director and key creative [sic] as well as

COMPLAINT AND DEMAND FOR JURY TRIAL

business and creative control of the Property", and purports to grant FUNimation 50% equity in the Motion Picture.

33. The AUM/FUNimation Agreement was signed by Gen Fukunaga as "President of FUNimation" while Gen Fukunaga was also Managing Partner of AUM.

34. Defendant Robert Rodriguez signed the AUM/FUNimation Agreement on behalf of AUM.

35. On January 8, 2013, Plaintiff signed an agreement which purported to assign his copyright and intellectual property rights ("Assignment of Copyright and Intellectual Property Rights") to a newly created company called Bullet Film Production, LLC (hereinafter "LLC"), unaware that the LLC had been created without referencing him in any respect, e.g., as director, writer, owner, or acknowledging any of the rights vested in Plaintiff pursuant to the Original Agreement.

36. On January 10, 2013, Plaintiff also signed an agreement that purported to sell his literary rights to his script to the LLC for $20,000 ("Agreement to Sell Literary Rights").

37. The LLC had been formed without prior notice to or knowledge of Plaintiff; as set forth in the LLC's Operating Agreement, dated January 15, 2013, the purpose of the LLC is:

> "[T]o develop and produce for Sale or assignment to a Distributor and/or to otherwise exploit the Motion Picture ["Bullet"] and ancillary rights to the Motion Picture and engage in any lawful business activities reasonably related to any of the foregoing."

38. Defendants AUM and FUNimation are purported to be vested with 65% ownership interest in the LLC, in contravention of the Original Agreement, which granted AUM only 35% interest, in order to gain majority control over the Motion Picture. The remaining 35% ownership interest was vested in SC Films International.

39. Defendants AUM and FUNimation conspired to name FUNimation as Manager in the LLC's Operating Agreement, with broad authority to expend the LLC's funds "and in such amounts as the Manager, in his sole discretion, shall determine is reasonably necessary to effectuate the purposes" of the LLC, is authorized to execute agreements on behalf of the LLC, is authorized to manage, control and borrow money on behalf of the LLC, is authorized to enter into

COMPLAINT AND DEMAND FOR JURY TRIAL

1    agreements on behalf of the LLC with motion picture or television production companies, or,

2    inter alia, other third parties to assist in the production of the Motion Picture.

3        40.    Defendant Gen Fukunaga's name appears three times as signatory on the

4    Operating Agreement: as President of FUNimation, as "Manager" of AUM, and as Manager of

5    the LLC.

6        41.    The LLC's Operating Agreement fails to acknowledge Plaintiff as director, writer

7    or producer of the Motion Picture, and in fact fails to contain any mention of Plaintiff in any

8    context.

9        42.    Defendants failed to name Plaintiff as either a member of the LLC, nor a signatory

10   on the Operating Agreement, and accordingly Plaintiff is therefore not bound by the arbitration

11   clause (Section 15.6) or the clause purporting to set forth the applicability of Texas law (Section

12   15.5).

13       43.    The LLC was established and the Operating Agreement entered into in direct

14   contravention of the Original Agreement, by which defendant AUM agreed to create *with*

15   *Plaintiff* and SC Films International the very vehicle purported to be created by the LLC.

16       44.    Further, the LLC was established and the Operating Agreement entered into in

17   direct contravention of the Original Agreement, which prohibited AUM from entering into

18   agreement which would interfere, impair or conflict with the terms and conditions of the Original

19   Agreement, or from engaging in any unethical, deceptive, or misleading practices.

20       45.    Plaintiff was not informed that the LLC was being established and the Operating

21   Agreement entered into until after production had commenced, and repeatedly asked FUNimation

22   why he had been excluded from the formation of the LLC, but was never given an explanation.

23       46.    Instead, he was in the middle of shooting the Motion Picture on location when he

24   was sent the agreement for directing services (hereinafter "Agreement for Directing Services")

25   under the LLC letterhead; he requested an opportunity to have an attorney review the agreement,

26   given the fact that Defendants have excluded him from the formation of the LLC, but was told his

27   signature was needed immediately or the production would stop.

28

1    47.    On February 19, 2013, Plaintiff asked Defendants FUNimation, SC Films

2    International, and AUM why he had not been included in the formation of the LLC; SC

3    International subsequently advised that it had no objection to Plaintiff being included in the LLC.

4    48.    Plaintiff continued his repeated questioning as to why he had not been included in

5    the LLC, and in fact stated on March 6, 2013, that as 30% owner of the film, he could not

6    understand why he was not given a share in the LLC with voting power. Plaintiff repeatedly asked

7    to be included in the LLC.  Defendants FUNimation and AUM continued to refuse adding

8    Plaintiff to the LLC, and SC International pointed out on March 18, 2013 that to do so would

9    divest Defendants of majority control of the LLC. Also on March 18, 2013, Plaintiff complained

10   because he had not been paid fully pursuant to the agreements he had entered into when he was

11   unaware of the LCC creation and Operating Agreement, and objected to the validity of the

12   assignment of his copyright and intellectual property rights which were made before he had

13   learned he had been excluded from the LLC. Specifically, he was owed sums for directing, for the

14   script, plus additional sums given that that the budget exceeded $500,000. Based on payments

15   made to him to date, he is owed at least $27,000.

16   49.    Per the Agreement for Directing Services, Plaintiff was contracted to not only

17   direct the filming but also direct the editing in post production.

18   50.    On or about April 8, 2013, after Plaintiff had fulfilled his duties to complete the

19   filming of the Motion Picture, he attempted to secure the Motion Picture's hard drives to work on

20   post production editing but Defendant FUNimation refused Plaintiff access to same. Instead,

21   Plaintiff was informed that the hard drives would be placed in a vault pending resolution of legal

22   issues with SC Films International.

23   51.    On or about April 10, 2013, Plaintiff was advised that AUM's CEO Robert

24   Rodriguez had stated AUM never intended to pay Plaintiff.

25   52.    Numerous attempts have been made by Plaintiff and SC International to resolve

26   the issues which have arisen due to Defendants' actions.

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

1    53.    On August 2, 2013, Plaintiff was informed that FUNimation has been editing the
2  Motion Picture without him by an editor, Julio Saldarriaga, who during the first week of April,
3  2013 had advised Plaintiff that according to FUNimation, the Motion Picture had been vaulted
4  while the legal issues are being resolved.

5    54.    Since at least February 7, 2013 the media has reported that the Motion Picture is
6  being directed by Plaintiff, however, given Defendants' refusal to allow Plaintiff access to
7  continue directing, Plaintiff's credit as director appears to be in jeopardy, leading to reputation
8  damages.

9    55.    From July 18-21, 2013, Defendants, including Giant Ape Media, advertised the
10 Motion Picture at the widely attended San Diego Comic Con Convention. In direct contravention
11 of the Original Agreement, the advertisements, including the large poster displayed at
12 Defendants' booth, did not list the Motion Picture as "A Nick Lyon Film".

13   56.    The website for the Motion Picture, www.bullet-movie.com also fails to identify
14 the Motion Picture as "A Nick Lyon Film".

15   57.    The trailer for the Motion Picture fails to identify the Motion Picture as "A Nick
16 Lyon Film".

17   58.    Posters for the Motion Picture have further failed to identify the Motion Picture as
18 "A Nick Lyon Film".

19                                        **COUNT 1**

20                               **Copyright Infringement**

21                               **Against All Defendants**

22   59.    Plaintiff realleges and incorporates by reference the allegations contained in
23 Paragraphs 1 through 58.

24   60.    Plaintiff held a copyright interest in the Motion Picture until he was fraudulently
25 misled into signing an agreement assigning his rights to same.

26   61.    His assignment of his copyright interest is therefore void and Plaintiff retains a
27 copyright interest in the Motion Picture.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

62.     Without authorization, all Defendants have and continue to utilize Plaintiff's copyrighted script and film without his permission in post production editing and marketing.

63.     Defendants' actions are willful, intentional, in purposeful disregard of Plaintiff's copyright, with knowledge that his property is subject to copyright, and that their continued use of Plaintiff's copyrighted property is without authorization. As a direct and proximate cause of Defendants' infringement of Plaintiff's copyright under the Copyright Act, 17 U.S.C. section 501 et seq, Plaintiff is entitled to damages and disgorgement of Defendants' profits.

64.     Monetary relief alone is not adequate to fully address the irreparable injury that Defendants' unlawful action have caused and will continue to cause Plaintiff if not enjoined.

## COUNT 2

### Breach of Contract

### Against Defendants AUM,  Robert Rodriguez and Gen Fukunaga

65.     Plaintiff realleges and incorporates by reference Paragraph 1 through 64.

66.     Defendants have breached the Original Agreement by their failure, inter alia, to include Plaintiff in the LLC, when the Original Agreement stated that all parties to the Original Agreement would create the special vehicle entity—i.e., the LLC—to produce the Motion Picture.

67.     Defendants further breached the Original Agreement, inter alia, by their failure to provide Plaintiff the tools necessary to fulfil his duties as post production director and producer; in fact, Plaintiff has been informed that Defendant FUNimation is editing without him, even though he was previously told that the editing was being placed on hold while the pending legal issues are being resolved.

68.     Defendants further breached the Original Agreement, inter alia, by failing to provide Plaintiff credit in advertising of the Motion Picture, to wit, "A Nicholas Lyon Film", including the Motion Picture's website and large poster displayed to large audiences at San Diego's Comic Con, causing reputational damages insofar as, inter alia, members of the industry

10

1  had been informed that Plaintiff was making the Motion Picture and his exclusion on the

2  advertising credits infer that he has been removed from the production

3       69.    Defendants, by giving themselves rights under the LLC and designating

4  themselves as majority shareholders, are uniquely situated to control the management of the

5  Motion Picture, with the ultimate goal of incurring damages--preventing Plaintiff from receiving

6  any net receipts, consistent with Robert Rodriguez' statement that Plaintiff will not receive any

7  monies from the film project nor own any rights.

8       70.    Defendants breached the Original Agreement by giving themselves an ownership

9  interest to a combined 50% when AUM only owned a 35% interest per the terms of the Original

10  Agreement, and which completely fails to grant Plaintiff any ownership interest when he

11  understood that he would be receiving a 30% ownership in the Motion Picture. By the Original

12  Agreement, all the parties—which was defined *to include Plaintiff*-- agreed to create a special

13  purpose vehicle entity to hold and manage the rights, produce, and *own* the Motion Picture.

14       71.    Defendants have failed to pay all that is due Plaintiff, and in fact still owed at least

15  $27,000.

16  **COUNT 3**

17  **Breach of Covenant of Good Faith and Fair Dealing**

18  **Against Defendants AUM, Robert Rodriguez and Gen Fukunaga**

19       72.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 71.

20       73.    Plaintiff entered into the Original Agreement in good faith and in reliance on

21  Defendants' representations that they would, inter alia, abide by all of the terms of the Original

22  Agreement, including the promise to include Plaintiff in the creation of the LLC, avoid deceptive,

23  misleading or unethical practices, include Plaintiff to approve and exchange all relevant fully

24  executed agreements by all parties, and exercise their rights and fulfill their obligations in a

25  manner that would reflect favorably at all times on the good name, goodwill and reputation of all

26  parties, including Plaintiff.

27

28

11

74.     By entering into the Original Agreement Defendants also impliedly promised to not do anything to unfairly interfere with Plaintiff's right to receive the benefits of the Original Agreement.

75.     Defendants breached this implied promise by entering into the AUM/FUNimation Agreement without Plaintiff's knowledge or consent, whereby FUNimation is purportedly to receive a 50% equity interest in the Motion Picture, without regard to Plaintiff's 30% ownership interest.

76.     Defendants breached this implied promise when FUNimation created the LLC without Plaintiff's knowledge or participation, leaving FUNimation and Fukunaga with management control over the production, with the ability to replace Plaintiff as director and prevent him from completing the post production directing of the Motion Picture and to control the budget and expenses, which could adversely ultimately impair net revenues to be paid to Plaintiff.

77.     Defendants breached this implied promise when they advertised the Motion Picture at the widely attended San Diego Comi Con without listing the credit: "A Nick Lyon Film", knowing that such credit was required per the Original Agreement, and knowing that the media had previously reported that Plaintiff was the director of the Motion Picture.

78.     Defendants' acts unfairly interfered with Plaintiff's right to benefit from the contract, including his role as director, and potential net revenues.

79.     Defendants have caused further harm by failing to give credit to Plaintiff in advertising.

## COUNT 4

### Promissory Fraud/False Promises

### Against Defendants AUM, Robert Rodriguez and Gen Fukunaga

80.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 79.

12

81.     Defendant AUM, including Defendants Robert Rodriguez as signatory on behalf of AUM, and Gen Fukunaga as Managing Director of AUM, made promises described herein, and as set forth in the Original Agreement.

82.     These promises were important to Plaintiff agreeing to enter into the Original Agreement, and to agree to assign his copyright to the Motion Picture.

83.     Defendant AUM, Rodriguez and Fukunaga did not intend to fulfil these promises, and failed to perform as indicated by the fact that just two days after the September 2, 2012 Original Agreement was executed, Defendant AUM entered into an agreement—without Plaintiff's knowledge or consent—to purportedly assign to FUNimation a 50% equity ownership.

84.     Given the close relationship between FUNimation and AUM, including, inter alia, Defendant Fukunaga's role in both FUNimation and AUM, it is clear that Defendants also conspired and never intended to ensure that the promises to Plaintiff would be fulfilled, including the statement by AUM's CEO Robert Rodriguez that AUM never intended to pay Plaintiff.

85.     Defendants intended that Plaintiff rely on the promises set forth in the Original Agreement, so that Plaintiff would assign his copyright to the LLC.

86.     Plaintiff reasonably relied on Defendant AUM's promises as set forth in the Original Agreement and did assign his copyright to the LLC and attempted to execute his duties as director, finishing the shoot, until he was prevented from fulfilling his duty as director of post production.

87.     Plaintiff also reasonably relied on Defendant AUM's promises as set forth in the Original Agreement, to shoot a successful film, including convincing colleagues in the industry with his goodwill to keep the Motion Picture within a reasonable budget, knowing that his ultimate revenue would be positively impacted by such budget management.

///

///

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT 5

### Intentional Interference with Contractual Relations

### Against All Defendants

88.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 87.

89.   Defendants Gen Fukunaga and FUNimation were aware of the Original Agreement, given that Gen Fukunaga is a Managing Partner of AUM as well as the President of FUNimation, and knowledge of the Original Agreement is imputed on FUNimation's division, Giant Ape Media, given Fukunaga's position as President of FUNimation.

90.   Defendants Fukunaga, FUNimation, AUM and Rodriguez intended to disrupt the performance of the Original Agreement, as evidenced, inter alia, by its agreement with AUM just two days after AUM signed the Original Agreement, by creating the LLC without Plaintiff's knowledge or consent, misleading Plaintiff into assigning his copyright to the Motion Picture, allowing the continued editing of the Motion Picture without Plaintiff's direction.

91.   Defendants Fukunaga, FUNimation, and Giant Ape Media have further intended to disrupt Plaintiff's performance as director in continuing to fail to acknowledge the Motion Picture as "A Nick Lyon Film" on all marketing.

92.   The conduct by Defendants Fukunaga and FUNimation in, inter alia, entering into the AUM/FUNimation Agreement, by creating the LLC without Plaintiff's knowledge or consent, misleading Plaintiff into assigning his copyright to the Motion Picture, and allowing the continued editing of the Motion Picture without Plaintiff's participation, have prevented Plaintiff's performance or has made his performance as director and producer of the Motion Picture more expensive and difficult.

93.   The conduct by Defendants Fukunaga, FUNimation and Giant Ape Media in, inter alia, failing to acknowledge the Motion Picture as "A Nick Lyon Film" has made his performance as director and producer more difficult.

COMPLAINT AND DEMAND FOR JURY TRIAL

94.     Plaintiff's reputation has been and will continue to be damaged, his right to future net receipts and his ownership interest in the Motion Picture have been harmed due to the wrongful, intentional and continuing conduct by all Defendants.

## COUNT 6

### California Unfair Competition and Unfair Business Practices
### under Bus. & Prof. Code section 17200 et seq.
### Against all Defendants

95.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 94.

96.     Defendants' business practices as alleged infra constitute unfair business practices and/or unfair competition in violation of California Business and Professions Code section 17200 et seq.

97.     Plaintiff is and will continue to be damaged by Defendants' wrongful actions.

98.     Plaintiff has suffered and continues to suffer injury for which no adequate remedy exists at law.

99.     Without injunctive relief, Plaintiff has no means by which to control Defendants' unlawful conduct as set forth in Paragraphs 1 through 86.

100.    Plaintiff is entitled to injunctive relief prohibiting Defendants from violating California Business and Professional Code section 17200 et seq.

## COUNT 7

### Common Law Unfair Competition
### Against all Defendants

101.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 100.

15

1     102.   Defendants' business practices as alleged infra constitute unfair business practices

2     and/or unfair competition under common law.

3     103.   Plaintiff is and will continue to be damaged by Defendants' wrongful actions.

4     104.   Plaintiff has suffered and continues to suffer injury for which no adequate remedy

5     exists at law.

6     105.   Without injunctive relief, Plaintiff has no means by which to control Defendants'

7     unlawful conduct as set forth in Paragraphs 1 through 94.

8     106.   Plaintiff is entitled to injunctive relief prohibiting Defendants from further injury

9     and damages under the common law unfair competition law.

10

11                          **PRAYER FOR RELIEF**

12

13    WHEREFORE, the Plaintiffs pray for judgment as follows:

14        a.    Actual damages.

15        b.    Special damages.

16        c.    Interest.

17        d.    Punitive damages.

18        e.    Attorney's fees.

19        f.    Costs of suit.

20        g.    Injunctive relief to include: return of the hard drives, prohibition against further editing

21    without Plaintiff's direction, return of the hard drives to Plaintiff so he can complete editing

22    for release of the Motion Picture, prohibition of sale, distribution or marketing of the Motion

23    Picture without consent by Plaintiff.

24        h.    Void all contracts, including the AUM/FUNimation Agreement, and the Operating

25    Agreement, which were entered into without Plaintiff's knowledge or consent.

26        i.    Void all contracts which Plaintiff was fraudulently led to enter into, including the

27    assignment of his copyright.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

1   j.      Dissolution of the LLC, which was entered into without Plaintiff's knowledge, consent

2   or participation.

3   k.      Such further legal and equitable relief as the Court may deem just and proper.

4

5

6                        **DEMAND FOR JURY TRIAL**

7   Plaintiff further demands a jury trial in the above entitled action.

8

9   Dated: August 26, 2013                    KINAGA LAW FIRM

10                                     By:    _Patricia Kinaga_

11                                            PATRICIA A. KINAGA
                                              Attorneys for Plaintiff
12                                            NICHOLAS LYON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Michael W. Fitzgerald _____ and the assigned Magistrate Judge is _____ Andrew J. Wistrich _____ .

The case number on all documents filed with the Court should read as follows:

## 8:13CV1322 MWF AJWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ August 26, 2013 _____
Date

By  J.Prado _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

PATRICIA A. KINAGA, SBN 126845 (pkinaga@kinagalawfirm.com)
DANIEL HO, SBN 205852 (dho@kinagalawfirm.com)
WOO JEAN CHUNG, SBN 266838 (jchung@kinagalawfirm.com)
KINAGA LAW FIRM
617 South Olive Street, Suite 1210
Los Angeles, CA 90014
Tel: (213) 623-8588
Fax: (213) 623-8788

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS LYON, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>FUNIMATION PRODUCTIONS, LTD., dba FUNIMATION ENTERTAINMENT; AMERICAN UNITED MEDIA, LLC, dba IFA DISTRIBUTION; ROBERT RODRIGUEZ, as an individual; GEN FUKUNAGA, as an individual; GIANT APE MEDIA; and DOES 1 through 50<br><br>DEFENDANT(S). | CASE NUMBER<br><br>S A C V 1 3 - 1 3 2 2   MWF(AJWx)<br><br>SUMMONS |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Patricia A. Kinaga _____, whose address is 617 South Olive Street, Suite 1210, Los Angeles, CA 90014 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: AUG 2 6 2013 _____

By: JULIE PRADO
Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (10/11)                         SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| NICHOLAS LYON | FUNIMATION PRODUCTIONS, LTD., dba FUNIMATION ENTERTAINMENT; AMERICAN UNITED MEDIA, LLC, dba IFA DISTRIBUTION; ROBERT RODRIGUEZ, as an individual; GEN FUKUNAGA, as an individual; GIANT APE MEDIA; and DOES 1 through 50 |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) PATRICIA A. KINAGA, SBN 126845; DANIEL HO, SBN 205852; WOO JEAN CHUNG, SBN 266838 KINAGA LAW FIRM 617 South Olive Street, Suite 1210, Los Angeles, CA 90014    213.623.8588 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** According to proof.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Copyright Infringement (17 U.S.C. Section 501 et seq.) : Defendants have used Plaintiff's copyrighted property without authorization.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: _____

SACV13-1322

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE**: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles- American United Media, LLC, dba IFA Distribution<br>Orange- Robert Rodriguez | Texas- FUNimation Productions, Ltd., dba FUNimation Entertainment<br>Texas- Gen Fukunaga<br>Texas- Giant Ape Media |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** *Patricia Kinaga*   DATE: August 26, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |